The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
January 24, 2019

**2019COA10**

**No. 17CA1992, *Stiles v. Department of Corrections, Denver Reception & Diagnostic Center* — Government — State Personnel System Act — Disciplinary Proceedings**

In this Colorado State Personnel Board case, a division of the court of appeals considers the appropriate standard of review an Administrative Law Judge should employ during an evidentiary hearing under section 24-50-125(4), C.R.S. 2018 to decide whether an appointing authority acted arbitrarily and capriciously in disciplining a state-certified employee. Consistent with *Dep't of Instits., Div. for Developmental Disabilities, Wheat Ridge Reg'l Ctr. v. Kinchen*, 886 P.2d 700, 705 (Colo. 1994), the division holds that a section 24-50-125(4) hearing is a de novo hearing at which the Administrative Law Judge makes credibility, factual, and legal findings without deference to the appointing authority.

COLORADO COURT OF APPEALS     **2019COA10**

Court of Appeals No. 17CA1992
State Personnel Board Case No. 2016B034

Mathew Mark Stiles,

Petitioner-Appellee,

v.

Department of Corrections, Denver Reception & Diagnostic Center,

Respondent-Appellant,

and

State Personnel Board,

Appellee.

ORDER AFFIRMED

Division VI
Opinion by JUDGE FREYRE
Furman and Dunn, JJ., concur

OPINION PREVIOUSLY ANNOUNCED AS "NOT PUBLISHED PURSUANT TO
C.A.R. 35(e)" ON December 6, 2018, IS NOW DESIGNATED FOR PUBLICATION

Announced January 24, 2019

Greg D. Rawlings P.C., Greg D. Rawlings, Denver, Colorado, for Complainant-
Appellee

Philip J. Weiser, Attorney General, Katherine Aidala, Assistant Attorney
General, Denver, Colorado, for Respondent-Appellant

Philip J. Weiser, Attorney General, Leanne B. De Vos, Senior Assistant Attorney
General, Billy Seiber, First Assistant Attorney General, Denver, Colorado, for
Appellee

¶ 1     The Department of Corrections, Denver Reception and Diagnostic Center (DOC), appeals the order of the Colorado State Personnel Board (Board) reinstating appellee, Mathew Mark Stiles, because his termination from DOC was arbitrary and capricious. For the reasons described below, we affirm the Board's order.

## I.     Background

¶ 2     DOC hired Stiles as a part-time correctional officer in August 2010.  In December 2010, Stiles became a full-time employee, and, in 2011, he achieved state-certified status.  In 2013, DOC transferred Stiles to a boiler room position in the facility.  Every performance evaluation since Stiles' hiring date rated him as a competent employee, and Stiles never received any corrective or disciplinary actions during his employment.

¶ 3     Beginning in 2015, Stiles experienced several unexpected and stressful events in his personal life, including an admitted affair by his wife, his teenage daughter's diagnosis of and emergency hospitalization for schizophrenia, and disputes with his daughter's birth mother concerning his daughter's condition.  Stiles sought professional help through the Colorado State Employee Assistance Program.  Stiles' personal challenges never adversely affected his

job performance.  But the related stress of these challenges caused Stiles to experience bouts of insomnia.

¶ 4     Following an emotional counseling session with his wife and an argument with his daughter's birth mother on Friday, September 25, 2015, Stiles was unable to sleep.  To alleviate his insomnia, Stiles smoked some marijuana around midnight.  On Monday morning (September 28), Stiles returned to work and was randomly selected for drug testing.  He complied with the testing, and, the next day, he submitted a confidential incident report to DOC admitting his marijuana use and explaining the extenuating circumstances that led to it.  On October 2, DOC received the test results, which revealed a positive result for THC, the main psychoactive chemical in marijuana.

¶ 5     On October 13, Stiles received a hand-delivered Notice of Rule 6-10 Meeting.[1]  The notice, dated October 9, was signed by the appointing authority, Warden David Johnson, and informed Stiles

---

[1] A Rule 6-10 meeting "is not a formal hearing but rather an opportunity for the parties to exchange information.  The appointing authority must consider any written or oral information that the employee provides before making a final decision." *Dep't of Insts., Div. for Developmental Disabilities, Wheat Ridge Reg'l Ctr. v. Kinchen*, 886 P.2d 700, 705 (Colo. 1994) (citation omitted).

of an upcoming Rule 6-10 meeting concerning his continued employment in light of the test result. On October 19, Stiles met with Warden Johnson and provided an explanation for the positive test result. He was accompanied and supported by his immediate supervisor, Lieutenant James DeTello, who confirmed that Stiles was a valuable employee. On that same date, Lieutenant DeTello submitted Stiles' final performance review, which provided an overall rating of Level II (meets expectations) and a Communications and Interpersonal Skills rating of Level III (exceptional).

¶ 6 On November 2, Warden Johnson issued a notice of disciplinary action immediately terminating Stiles. Stiles appealed his termination to the Board. An Administrative Law Judge (ALJ) conducted a hearing and issued an initial decision. That decision rescinded Stiles' termination, modified the discipline to a ten percent pay reduction for six months, and ordered back pay and benefits. In reaching his decision, the ALJ found that Warden Johnson's decision was arbitrary, capricious, and contrary to rule or law. In particular, the ALJ found that Warden Johnson (1) failed to candidly and honestly consider all of the evidence he procured, as required by Department of Personnel & Administration Board

Rule 6-9, 4 Code Colo. Regs. 801-1, particularly Stiles' lack of prior disciplinary history and his extenuating mitigating circumstances; and (2) imposed discipline that was not within the range of reasonable alternatives by failing to consider the disciplinary alternatives set forth in the DOC regulation directed at marijuana use, DOC Admin. Reg. 1450-36(IV)(A)(1). On review, the Board adopted the ALJ's initial decision, and this appeal followed.

¶ 7     DOC contends that the ALJ employed an incorrect standard of review and improperly reweighed the evidence when he reviewed Warden Johnson's disciplinary action. DOC argues that the ALJ was required to defer to Warden Johnson's findings and that such deference supports Stiles' termination. We are not persuaded, for three reasons. First, the Rule 6-10 meeting is informal and does not sufficiently protect the property interests of a state-certified employee accused of misconduct. Second, section 24-50-125(4), C.R.S. 2018, provides for an adversarial proceeding at which the employee is entitled to representation by counsel of choice, and it requires the Board to make written findings of fact and conclusions of law — a hearing our supreme court has described as de novo. Finally, under the standard of review that binds this court, section

4

24-4-106(7), C.R.S. 2018, we conclude that the ALJ's decision is supported by the record.

## II. The Board's Appellate Process

¶ 8 "The state personnel system is established by Article XII, sections 13, 14, and 15, of the Colorado Constitution and is legislatively refined by" Title 24, Article 50 of the Colorado Revised Statutes. *Dep't of Insts., Div. for Developmental Disabilities, Wheat Ridge Reg'l Ctr. v. Kinchen*, 886 P.2d 700, 705 (Colo. 1994). One of its central features is that "persons within the system can be subjected to discharge or other discipline only for just cause." *Id.* The Constitution creates the Board and authorizes it to adopt rules to implement it. Colo. Const. art. XII.

¶ 9 The legislature has enacted a statute that enforces these constitutional standards by requiring that (1) an appointing authority notify the employee of the discipline, § 24-50-125(2); (2) the employee be provided a hearing before the Board if requested, § 24-50-125(3); (3) the employee be afforded the right to legal representation at the hearing, § 24-50-125(4); and (4) the Board make findings of fact and conclusions of law affirming, modifying, or reversing the appointing authority's discipline, *id.*

¶ 10    Finally, the Board has prescribed rules that elaborate on the disciplinary procedures set forth in the statute.  *See* Dep't of Pers. & Admin. Ch 6, 4 Code Colo. Regs. 801-1; Dep't of Pers. & Admin. Ch 8, 4 Code Colo. Regs. 801-1.  These rules permit an appointing authority to discipline a certified employee for failing to comply with efficient service or competence, for willful misconduct, or for an inability to perform assigned duties.  Dep't of Pers. & Admin. Board Rule 6-12, 4 Code Colo. Regs. 801-1.  They require an appointing authority to meet with the employee before taking disciplinary action.  Dep't of Pers. & Admin. Board Rule 6-10, 4 Code Colo. Regs. 801-1.  The appointing authority must inform the employee of the alleged misconduct and allow the employee to respond in this meeting.  *Id.*

¶ 11    In deciding whether to discipline a certified employee, the appointing authority must take into consideration certain criteria set forth in Rule 6-9:

> The decision to take corrective or
> disciplinary action shall be based on the
> nature, extent, seriousness, and effect of
> the act, the error or omission, type and
> frequency of previous unsatisfactory
> behavior or acts, prior corrective or
> disciplinary actions, period of time since a

> prior offense, previous performance evaluations, and mitigating circumstances. Information presented by the employee must also be considered.

Dep't of Pers. & Admin. Board Rule 6-9, 4 Code Colo. Regs. 801-1. If discipline occurs, the employee must be notified of the decision and the right to appeal the decision to the Board within ten days of receipt of notice. § 24-50-125(3); Dep't of Pers. & Admin. Board Rule 6-15, 4 Code Colo. Regs. 801-1; Dep't of Pers. & Admin. Board Rule 8-8, 4 Code Colo. Regs. 801-1.

¶ 12    An ALJ may conduct the hearing on behalf of the Board. § 24-50-103(7), C.R.S. 2018. The ALJ must make written findings of fact and conclusions of law and render an initial decision affirming, modifying, or reversing the disciplinary action. §§ 24-50-125(4), -125.4(3), C.R.S. 2018; *Colo. Dep't of Human Servs. v. Maggard*, 248 P.3d 708, 712 (Colo. 2011). Either party may appeal the ALJ's initial decision by petitioning the Board to modify the decision. § 24-50-125.4(4); *Kinchen*, 886 P.2d at 706. On review, the Board must accept the ALJ's findings of historical fact unless they are contrary to the weight of the evidence. § 24-4-105(15)(b),

C.R.S. 2018.  The Board's decision is reviewable in this court.  § 24-50-125.4(3); *Kinchen*, 886 P.2d at 706.

A.    Standard of Review

¶ 13    We review the decision of an administrative agency for an abuse of discretion.  *Lawley v. Dep't of Higher Educ.*, 36 P.3d 1239, 1247 (Colo. 2001).  We will reverse a Board's decision only if we find that the Board acted arbitrarily and capriciously, made a decision that is unsupported by the record, erroneously interpreted the law, or exceeded its authority.  *Rice v. Auraria Higher Educ. Ctr.*, 131 P.3d 1096, 1100 (Colo. App. 2005) (citing § 24-4-106(7)).  We must sustain the Board's decision "if it has a reasonable basis in law and is supported by substantial evidence in the record considered as a whole."  *Farny v. Bd. of Equalization*, 985 P.2d 106, 109 (Colo. App. 1999).  Substantial evidence is "the quantum of probative evidence that a fact finder would accept as adequate to support a conclusion, without regard to the existence of conflicting evidence."  *Black Diamond Fund, LLLP v. Joseph*, 211 P.3d 727, 730 (Colo. App. 2009).  All reasonable doubts about the correctness of the Board's ruling must be resolved in its favor.  *Lawley*, 36 P.3d at 1252.

## B.    The ALJ Employed the Correct Standard of Review

¶ 14    The issue before us is whether, as DOC contends, the ALJ must defer to the appointing authority's weighing of the Rule 6-9 factors or whether, as Stiles contends, the hearing before the ALJ is de novo and requires no deference to the appointing authority's Rule 6-9 findings.  DOC correctly asserts that Rule 6-9 provides no guidance on how an appointing authority should weigh the factors.  And it reasons that this absence implies that an ALJ should defer to the appointing authority's findings because permitting the ALJ to reweigh the factors would "read into the rule a requirement that does not exist."  *See Beruman v. Dep't of Human Servs.*, 2012 COA 73, ¶ 26.  We disagree and find more persuasive and binding our supreme court's analysis of section 24-50-125 and its conclusion that only a de novo hearing can properly protect a certified employee's property interests.  *Kinchen*, 886 P.2d at 707; *People v. Gladney*, 250 P.3d 762, 768 n.3 (Colo. App. 2010) (this court is bound by supreme court precedent).

¶ 15    In *Kinchen*, our supreme court held that the appointing authority bears the burden of proof in disciplinary hearings before the Board.  886 P.2d at 710.  In doing so, it recognized that the

Colorado Constitution provides state-certified employees with a property interest in their employment and that such employees can only be discharged for just cause based on constitutionally specified criteria. *Id.* at 707. In analyzing disciplinary procedures, the court noted that the Board has prescribed rules requiring the appointing authority to notify and meet with the employee before taking disciplinary action. Of importance here, the court said, "[t]his meeting is not a formal hearing but rather an opportunity for the parties to exchange information." *Id.* at 705.

¶ 16　　The supreme court further explained that the forum in which a certified employee's property interest is properly protected is the section 24-50-125 hearing before the Board. *Id.* at 707. Indeed, unlike the procedures leading up to the imposition of disciplinary action, which are informal and afford little protection to an employee accused of misconduct, the Board hearing ensures that a certified employee is discharged "only for just cause based on constitutionally specified criteria." *Id.* And the court found this was a de novo hearing where "the scales are not weighted in any way by the appointing authority's initial decision to discipline." *Id.* at 706. We view this language as dispositive and in conflict with

DOC's deference argument. Moreover, if the Board were required to defer to the appointing authority, "there would be little check on the constitutional sufficiency of an appointing authority's standards in imposing discipline." *Id.* at 707. Accordingly, we hold that an ALJ is not bound by the appointing authority's initial decision and need not defer to it. Instead, the ALJ conducts a de novo review of the appointing authority's decision, weighs the evidence presented, and must make findings of historical fact and ultimate conclusions of fact based on that evidence.

¶ 17    Because rulings and rationale necessary to reach conclusions on the issues presented are binding law, we are not convinced that we may depart from the language of *Kinchen* based on DOC's argument that this language constitutes nonbinding dicta. *Super Valu Stores, Inc. v. Dist. Court*, 906 P.2d 72, 78-79 (Colo. 1995) ("Conclusions of an appellate court on issues presented to it as well as rulings logically necessary to sustain such conclusions become the law of the case."); *Hardesty v. Pino*, 222 P.3d 336, 340 (Colo. App. 2009) ("A holding and its necessary rationale . . . are not dicta."). The cited language provided the rationale of the court's holding that the appointing authority bears the burden of proof at

the Board hearing. And, the court expressly held that the hearing before the Board is de novo. *See Kinchen*, 886 P.2d at 706 n.10 ("We hold . . . that the hearing before the Personnel Board is *de novo*.").

> C.   The ALJ Properly Applied the Standard of Review

¶ 18    DOC next contends that the ALJ misapplied the arbitrary and capricious standard in modifying Warden Johnson's decision. We disagree.

¶ 19    Section 24-50-103(6) authorizes an ALJ to overturn an appointing authority's actions only if it finds that those actions were arbitrary, capricious, or contrary to rule or law. *Lawley*, 36 P.3d at 1251-52. An appointing authority acts arbitrarily or capriciously in one of three ways:

> (a) By neglecting or refusing to use reasonable diligence and care to procure such evidence as it is by law authorized to consider in exercising the discretion vested in it.
>
> (b) By failing to give candid and honest consideration of evidence before it on which it is authorized to act in exercising its discretion.
>
> (c) By exercising its discretion in such manner after a consideration of evidence before it as clearly to indicate that its action

12

> is based on conclusions from the evidence such that reasonable men fairly and honestly considering the evidence must reach contrary conclusions.

*Id.* at 1252 (quoting *Van DeVegt v. Bd. of Cty. Comm'rs*, 98 Colo. 161, 166, 55 P.2d 703, 705 (1936)).

¶ 20 The ALJ determined that Warden Johnson used reasonable diligence to procure evidence and appropriately conducted the Rule 6-10 meeting. But, he found that Warden Johnson violated Rule 6-9 by failing to properly weigh the mitigating evidence and the absence of any prior discipline. The ALJ noted Stiles' "mistake" in consuming marijuana one time, Stiles' "solid performance" record, Stiles' "absence of any prior corrective action," Stiles' "documented desire to improve his job," and Stiles' "dedication to his job." Because the ALJ was free to weigh these facts and because these evidentiary facts are well supported by the record, we may not set them aside. *Lawley*, 36 P.3d at 1245; *Kinchen* 886 P.2d at 706.

¶ 21 As well, the ALJ found that Warden Johnson violated Rule 6-9 by imposing the most severe form of discipline for Stiles' misconduct. While the ALJ agreed that Stiles' marijuana use was serious (as reflected in the six month, ten percent pay reduction),

13

he found that it was not so egregious as to warrant termination because this was a one-time bad decision, the effects of the marijuana wore off well before Stiles returned to work, and no evidence was presented that this one-time use ever affected Stiles' job performance. The ALJ also cited DOC's marijuana consumption regulation, DOC Admin. Reg. 1450-36(IV)(A)(1), and found that its violation could result in any type of corrective action and "need not result in the severest form of disciplinary action." Because these findings of evidentiary fact are supported by the record, we affirm the Board's order adopting the ALJ's initial decision.

¶ 22 Last, we reject DOC's argument that the ALJ was required to make findings under all three factors of the three-part test for arbitrary and capricious action, and that the third factor (reasonable men would reach a different conclusion) somehow acts as a check on the other two factors and therefore requires deference by the ALJ. DOC cites no authority for this argument and we conclude that supreme court authority contradicts it. *See Lawley*, 36 P.3d at 1252 (upholding Board's decision that university failed to give candid and honest consideration to evidence before it (second factor)); *Kinchen*, 866 P.2d 706 n.10 (requiring the ALJ to make "an

14

independent finding of whether the evidence presented justifies a dismissal for cause"). Accordingly, because the ALJ's decision and the Board's order adopting it are supported by the record, we affirm the Board's order.

III.   Conclusion

¶ 23    The order is affirmed.

JUDGE FURMAN and JUDGE DUNN concur.